Matthew S. Parmet (CSB # 296742)
mparmet@brucknerburch.com
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Ste. 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065

Andrew W. Dunlap (Texas Bar # 24078444)
*seeking admission pro hac vice*
adunlap@fibichlaw.com
**FIBICH, LEEBRON, COPELAND,
   BRIGGS & JOSEPHSON**
1150 Bissonnet
Houston, Texas 77005
Telephone: (713) 751-0025
Telecopier: (713) 751-0030

**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| STEVE HERNANDEZ, Individually and On Behalf of Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BNK PETROLEUM (US), INC., a California corporation; and DOES 1-30, inclusive,<br><br>Defendants. | CASE NO. 2:17-cv-01262<br><br>**Plaintiff's Original Collective Action Complaint for Damages (with Jury Demand)**<br><br>1. **Failure to pay overtime compensation (Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*)** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### SUMMARY

1. Plaintiff Steve Hernandez worked for Defendant BNK Petroleum (US), Inc. ("BNK") as a wellsite supervisor, charged by BNK with enforcing its policies and procedures on its wellsites.

2. Despite working exclusively for BNK and coordinating BNK's own jobs, workers, tools, and equipment, BNK did not treat Hernandez as an employee.

3. BNK classified Hernandez as an independent contractor for purposes of the Fair Labor Standards Act ("FLSA").

**Plaintiff's Original Complaint** - 1 -

4. Hernandez alleges that the nature of his working relationship with BNK is that of an employer-employee relationship, and he is entitled to the benefits of an employee under the FLSA.

5. Hernandez worked overtime while working for BNK.

6. BNK paid Hernandez a day rate.

7. BNK did not pay Hernandez a salary.

8. BNK did not pay Hernandez hourly and overtime.

9. BNK misclassified Hernandez and all wellsite supervisors as independent contractors.

10. Hernandez and the other wellsite supervisors are similarly situated for the purposes of the FLSA.

11. Hernandez seeks back wages, liquidated damages, attorney fees, and costs.

## JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action involves a federal question under the FLSA, 29 U.S.C. § 216(b).

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District

14. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because BNK is headquartered in this District and Division.

## THE PARTIES

15. Hernandez worked exclusively for BNK as a wellsite supervisor from approximately July 2014 until December 2014.

16. Throughout his employment with BNK, Hernandez was paid a day-rate with no overtime compensation.

17. BNK classified Hernandez as an independent contractor.

18. Hernandez's consent to be a party plaintiff is attached as Exhibit A.

19. Hernandez brings this action on behalf of himself and all other similarly situated workers, who were classified as independent contractors and paid by BNK's day-rate system in the job position of wellsite supervisor.

20. BNK paid each of these workers a flat amount for each day worked.

**Plaintiff's Original Complaint** - 2 -

21. BNK did not paid these workers overtime for all hours that they worked in excess of 40 hours in a workweek, as required by the FLSA.

22. The class of similarly situated workers ("Putative Class Members") consists of:

**Current and former wellsite supervisors employed by, or working on behalf of, BNK Petroleum (US), Inc. during the past three years who were classified as independent contractors and paid a day-rate.**

23. BNK may be served by serving its registered agent for service of process: **Capitol Corporate Services, Inc., 455 Capitol Mall Complex, Suite 217, Sacramento, California 95814**.

24. Hernandez is informed and believes, and thereby alleges that at all relevant times BNK and Defendants Does 1 through 30 were affiliated, and each was the principal, agent, servant, partner, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor or predecessor in interest, joint venturers, and/or joint enterprises of all or some of the other defendants.

25. Hernandez is informed and believes, and thereby alleges that, due to the relationship between BNK and Defendants Does 1 through 30, that such persons or entities were joint employers for the purposes of the FLSA. *See* 29 C.F.R. § 791.2.

26. Hernandez is unaware of the true names of Defendants Does 1 through 30, and so Hernandez sues those defendants under said fictitious names. Hernandez will amend this complaint to show the true names and capacities of such fictitiously named defendants after the same has been ascertained.

27. Because the true names of Does 1 through 30 are currently unknown to him, Hernandez refers to all Defendants collectively as "BNK" throughout this Complaint.

## COVERAGE UNDER THE FLSA

28. For at least the past three years, BNK has been an employer within the meaning of the section 3(d) of the FLSA, 29 U.S.C. § 203(d).

29. For at least the past three years, BNK has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

30. For at least the past three years, BNK has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce

**Plaintiff's Original Complaint** - 3 -

or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

31. For at least the past three years, Hernandez and the wellsite supervisors were engaged in commerce or in the production of goods for commerce.

32. For at least the past three years, BNK treated Hernandez (and indeed all its wellsite supervisors that it classified as independent contractors) as employees and uniformly dictated the pay practices to which Hernandez and its other employees (including its so-called "independent contractors") were subjected.

33. BNK's misclassification of Hernandez as an independent contractor does not alter its status as an employer for purposes of this FLSA collective action.

**FACTS**

34. BNK is in the business of finding and exploiting large oil and gas reserves. *See* BNK, Home, http://www.bnkpetroleum.com (last visited Feb. 15, 2017).

35. To do this, BNK owns and operates wellsites across the United States.

36. According to its website, BNK's mission is to maximize the value of its United States shale oil assets, while looking for additional high-impact, large growth potential projects. *See* BNK, About Us, http://www.bnkpetroleum.com/about-us (last visited Feb. 15, 2017).

37. To achieve this mission, BNK operates wellsites across the entire United States.

38. While BNK focuses on unconventional well methods of production, it also applies unconventional methods of employment for its workers.

39. Every BNK wellsite adheres to BNK policies and procedures.

40. BNK's wellsite supervisors are treated by BNK as independent contractors or consultants.

41. BNK relies upon its wellsite supervisors to enforce BNK policies and procedures on the wellsite.

42. BNK created an employer-employee culture between it and its wellsite supervisors.

43. BNK determines the schedules worked by the wellsite supervisors.

44. BNK provides all the essential equipment and tools for the wellsite supervisors to perform their jobs.

45. BNK sets the rates of pay wellsite supervisors receive.

46. BNK employs the wellsite supervisors for extended periods of time.

47. BNK employees direct the wellsite supervisors.

48. BNK has the ultimate authority to hire, discipline, or fire the wellsite supervisors.

49. BNK requires the wellsite supervisors to work at least 12 hours per day, often 7 days per week.

50. BNK made the decision to treat wellsite supervisors as independent contractors, not as employees.

51. Despite requiring overtime work, BNK does not paid overtime compensation to wellsite supervisors.

52. Neither does BNK pay wellsite supervisors a salary.

53. All the while, wellsite supervisors work for BNK in place of an employee, ensuring wellsites comply with company and governmental rules and regulations, investigating workplace injuries, conducting safety meetings, directing workers, influencing work flow, and filling out reports.

54. The work wellsite supervisors perform is an essential part of BNK's core business of exploiting the U.S. oil and gas deposits.

55. BNK controlled all meaningful aspects of the wellsite supervisor's job to ensure its strategic objectives were fulfilled.

56. Even though Hernandez often worked away from BNK's traditional offices without the presence of an in-person BNK superior, BNK still controlled all aspects of Hernandez's job activities by enforcing mandatory compliance with BNK's policies and procedures.

57. BNK's wellsite supervisors all perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

58. The wellsite supervisors also worked similar hours and were denied overtime because of the same illegal pay practice.

59. BNK's policy of treating wellsite supervisors as independent contractors violates the FLSA.

60. Even if BNK treated these workers as employees, its day-rate pay structure did not meet the salary basis test.

61. Hernandez was economically dependent on BNK during his employment.

62. Because Hernandez and BNK's other wellsite supervisors were misclassified as independent contractors by BNK, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

63. BNK day-rate system violates the FLSA, because Hernandez and the other wellsite supervisors did not receive any pay for hours worked over 40 hours each week.

### CAUSE OF ACTION—VIOLATION OF THE FLSA

64. BNK has violated, and is violating, section 7 of the FLSA, 29 U.S.C. § 207, by employing wellsite supervisors in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such wellsite supervisors for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

65. BNK knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the wellsite supervisors overtime compensation.

66. BNK's failure to pay overtime compensation to these wellsite supervisors was neither reasonable, nor was the decision not to pay overtime made in good faith.

67. Accordingly, Hernandez and all those who are similarly situated wellsite supervisors are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

### COLLECTIVE ACTION ALLEGATIONS

68. Numerous wellsite supervisors have been victimized by this pattern, practice, and policy, which are in willful violation of the FLSA.

**Plaintiff's Original Complaint** - 6 -

69. Many of these wellsite supervisors have worked with Hernandez and have reported that they were paid in the same manner and were not properly compensated for all hours worked, as required by the FLSA.

70. Thus, from Hernandez's observations and discussions with these wellsite supervisors, he is aware that the illegal practices or policies of BNK have been imposed on the wellsite supervisors.

71. The wellsite supervisors all were classified as independent contractors, received a day-rate, regularly worked in excess of 40 hours per week, and were not paid overtime compensation.

72. These wellsite supervisors are victims of BNK's unlawful compensation practices and are similarly situated to Hernandez in terms of relevant job duties, pay provisions, and employment practices.

73. BNK's failure to pay wages and overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies and practices, which are not dependent on the personal circumstances of the wellsite supervisors.

74. Thus, Hernandez's experiences are typical of the experiences of the wellsite supervisors.

75. The specific job titles or precise job locations of the various wellsite supervisors does not prevent collective treatment.

76. All the wellsite supervisors, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated for all hours worked in excess of 40 hours per week. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

## JURY DEMAND

77. Hernandez demands a trial by jury.

## RELIEF SOUGHT

78. WHEREFORE, Hernandez prays for judgment against BNK as follows:

   a. For an order allowing this action to proceed as a collective action under the FLSA and directing notice to the wellsite supervisors;

BRUCKNER BURCH PLLC

b. For an order pursuant to section 16(b) of the FLSA finding BNK liable for unpaid back wages, and an equal amount of liquidated damages, due to Hernandez and the class members;

c. For an order awarding Hernandez and the class members the costs of this action;

d. For an order awarding Hernandez and the class members their attorneys' fees;

e. For an order awarding Hernandez and the class members unpaid benefits and compensation in connection with the FLSA violations;

f. For an order awarding Hernandez and the class members pre- and post-judgment interest at the highest rates allowed by law; and

g. For an order granting such other and further relief as may be necessary and appropriate.

Respectfully Submitted,

**BRUCKNER BURCH PLLC**

By: ***/s/ Matthew S. Parmet***
    Matthew S. Parmet
    (CSB # 296742)
    mparmet@brucknerburch.com
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone:   (713) 877-8788
Telecopier:   (713) 877-8065

Andrew W. Dunlap
(Texas Bar # 24078444)
*seeking admission pro hac vice*
adunlap@fibichlaw.com
**FIBICH, LEEBRON, COPELAND,**
    **BRIGGS & JOSEPHSON**
1150 Bissonnet
Houston, Texas 77005
Telephone:   (713) 751-0025
Telecopier:   (713) 751-0030

**Attorneys for Plaintiff**